```
 1                IN THE UNITED STATES DISTRICT COURT
 2                   FOR THE DISTRICT OF MARYLAND
 3                          SOUTHERN DIVISION
 4  UNITED STATES OF AMERICA,     ) CRIMINAL
                                  ) NO. PJM-22-209
 5           Plaintiff,           )
                                  )
 6  v.                            )
                                  )
 7  NICHOLAS JOHN ROSKE,          )
                                  )
 8           Defendant.           )
 9              TRANSCRIPT OF STATUS PROCEEDINGS
              BEFORE THE HONORABLE PETER J. MESSITTE
10                  UNITED STATES DISTRICT JUDGE
             WEDNESDAY, OCTOBER 26, 2022; 2:59 P.M.
11                       GREENBELT, MARYLAND
12  APPEARANCES:
13  FOR THE PLAINTIFF:
14         OFFICE OF THE UNITED STATES ATTORNEY
           BY:  KATHLEEN O'CONNELL GAVIN, ESQUIRE
15         36 S. Charles Street
           Fourth Floor
16         Baltimore, Maryland  21201
           (410) 209-4887
17
    FOR THE DEFENDANT:
18
           OFFICE OF THE FEDERAL PUBLIC DEFENDER
19         BY:  ANDREW R. SZEKELY, ESQUIRE
           BY:  MEGHAN G. MICHAEL, ESQUIRE
20         100 S. Charles Street
           Tower II, 9th Floor
21         Baltimore, Maryland  21201
           (410) 962-3962
22
23
    OFFICIAL COURT REPORTER:
24  Renee A. Ewing, RPR, RMR, CRR - (301) 344-3227
25        ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***
```

```
 1          (Call to order of the Court.)
 2          THE COURT:  Good afternoon, ladies and gentlemen.  Be
 3  seated, please.  All right, Madam Clerk.
 4          THE DEPUTY CLERK:  The matter now pending before the
 5  Court is Criminal Case No. PJM-22-209, *United States of America*
 6  *vs. Nicholas John Roske*.  The matter now comes before the Court
 7  for a status conference.
 8          THE COURT:  All right.  Counsel, identify yourselves
 9  for the government and then for the defendant.
10          MS. O'CONNELL GAVIN:  Yes, Your Honor.  Good
11  afternoon.  Kathleen Gavin for the United States.
12          MR. SZEKELY:  Good afternoon, Your Honor.  Andrew
13  Szekely and Meghan Michael on behalf of Mr. Roske.  Mr. Roske
14  is seated to my immediate left this afternoon.
15          THE COURT:  All right.  Well, counsel have asked for
16  a status conference, so perhaps you, either the government or
17  defendant want to make a general statement about what you would
18  like to accomplish today, and then I have some of my own
19  matters I want to pursue.
20       Ms. Gavin, I will recognize you.
21          MS. O'CONNELL GAVIN:  Yes, Your Honor.
22       We requested the status conference to set in some sort of
23  schedule.  Right now, the defendant has obviously been
24  indicted.  There is a pending motion, a speedy trial order is
25  in place, and the defense has indicated they need some more
```

time to do some of their investigative work in determining how they are going to proceed, but we -- the government has -- is seeking some sort of parameters on terms of either status reports on some sort of schedule so that we can keep the case moving forward.

THE COURT: All right. Mr. Szekely, would you like to say anything?

MR. SZEKELY: I would, Your Honor. Thank you.

I think the government has correctly summarized where we are. We have no objection to regularly updating the Court as to the progression of the case. We propose something in the line of a status report or a follow-up status conference in 45 days. That would put us in mid December.

THE COURT: Okay. Well, certainly in this case, the parties can go at their own reasonable pace, and I think there are some issues, though, that I need to address with counsel.

The first issue, of course, is that I want to make sure that Mr. Roske understands where we are today and where he is today and then assure myself that we go forward.

It is always possible -- the Court doesn't get involved in plea discussions, but they may eventuate, and if they were to eventuate, I still would need to be able to evaluate the ability of Mr. Roske to appreciate and understand what's being discussed by way of plea. I don't get into the particulars at all at this stage. That's entirely between counsel.

So what I would propose to do is to evaluate Mr. Roske today in terms of a preliminary sense of where he is, and then, being realistic for a moment, I understand that 45 days would be a good period of time for the defense counsel to continue to consult with Mr. Roske locally, and if he were to be sent out right away for some sort of a mental evaluation, he would be less accessible. But at the end of the 45 days, we need to make a decision about what is going to be done.

And so it's clear, I think under my obligation as the Court, I still will need to be satisfied that for purposes of accepting a plea or going forward, that Mr. Roske is competent to do so. Whether there is going to be an evaluation as to a potential insanity defense, that's not my call. That's something that would eventuate later.

But 45 days in future would permit access to defense counsel. We will see where we are then. And then almost certainly, the Court, at that stage, would order some sort of mental evaluation. And as I understand it, counsel would not be averse to having an evaluation done locally, meaning within the Maryland area, as opposed to sending the defendant out to one of the Bureau of Prisons facilities that does evaluations. I know that takes time and we are not sure where the person would end up in any case. So that's where I am in terms of my tentative schedule.

I don't propose to swear Mr. Roske at this point, but I

```
 1  do want to ask him some questions.  All right?
 2              MR. SZEKELY:  Absolutely, Your Honor.
 3              THE COURT:  All right.  Mr. Roske, are you with me?
 4  Do you know who I am?
 5              THE DEFENDANT:  Yes.
 6              THE COURT:  Tell me your name exactly.
 7              THE DEFENDANT:  Nicholas John Roske.
 8              THE COURT:  How old are you?
 9              THE DEFENDANT:  26.
10              THE COURT:  And before you were taken into custody,
11  where were you residing?
12              THE DEFENDANT:  Southern California.
13              THE COURT:  Did you have a fixed address?
14              THE DEFENDANT:  Yes.
15              THE COURT:  What was that address?
16              THE DEFENDANT:  6239 Marshal Avenue.
17              THE COURT:  Is that a house or an apartment?
18              THE DEFENDANT:  It was a house.
19              THE COURT:  Whose house was it?
20              THE DEFENDANT:  My parents.
21              THE COURT:  So you had resided there continuously?
22              THE DEFENDANT:  Not -- not my entire life, but I had
23  been there about a year.
24              THE COURT:  Okay.  And how far did you go in school?
25              THE DEFENDANT:  I got a Bachelor's degree.
```

1          THE COURT: From where?
2          THE DEFENDANT: California State University,
3 Northridge.
4          THE COURT: Are you married or single?
5          THE DEFENDANT: Single.
6          THE COURT: Do you have any children?
7          THE DEFENDANT: No.
8          THE COURT: Okay. What's the last job that you held?
9          THE DEFENDANT: A substitute teacher.
10         THE COURT: And where was that?
11         THE DEFENDANT: Simi Valley Unified School District.
12         THE COURT: In California?
13         THE DEFENDANT: Correct.
14         THE COURT: Are you under the influence of any
15 alcohol or drug today?
16         THE DEFENDANT: No, I am not.
17         THE COURT: But you are taking certain kinds of
18 medication; is that a correct statement?
19         THE DEFENDANT: Correct.
20         THE COURT: Are you taking any medication that
21 affects your ability to appreciate and understand where you
22 are?
23         THE DEFENDANT: No.
24         THE COURT: You know where you are today? Tell me
25 where you are.

```
 1                 THE DEFENDANT:  Federal courthouse.
 2                 THE COURT:  Okay.  Now, you have been charged with a
 3   criminal offense, and the document is entitled "Indictment"
 4   which charges you with this offense.
 5           Have you seen the indictment in this case?
 6                 THE DEFENDANT:  Yes, I have.
 7                 THE COURT:  It charges you with an attempt to
 8   assassinate a justice of the U.S. Supreme Court in violation of
 9   18, United States Code, Section 351(c).
10           Is that understood?
11                 THE DEFENDANT:  Yes.
12                 THE COURT:  And have you talked to your attorneys
13   about the case and told them all you know about it?
14                 THE DEFENDANT:  Yes, I have.
15                 THE COURT:  All right.  And my record shows that you
16   entered a plea of not guilty in the case, and I accept that
17   that's so.
18           Very well.  What I am going to do is not to make any
19   order of evaluation of you at this time, but you need to
20   understand that I have to be satisfied that you are able to
21   follow what's going on in this proceeding, and should there be
22   other aspects of the proceeding, that you are competent to
23   follow.
24           Your counsel has advised me -- I think this is a correct
25   statement, Mr. Szekely -- that you are satisfied that you had
```

1 no problems communicating with Mr. Roske; is that correct?

2     MR. SZEKELY: That's correct, Your Honor. We have no
3 concerns regarding our client's competency.

4     THE COURT: Well, for now, I will accept that, and I
5 am not going to make any ruling about a referral at this point,
6 but the very high likelihood would be that at the end of 45
7 days, I will. And if, in fact, it's the kind of evaluation
8 that can be made locally, I will also accept that, either one
9 or two experts, however it works out, so that we don't have to
10 in any way interfere with counsel's access to Mr. Roske and
11 abide any lengthy period of delay that could happen if -- if
12 the Bureau of Prisons sends the defendant somewhere else.

13   Well, all right. I am not sure that much else, then,
14 needs to be said at this point unless counsel, do you have
15 anything more, Ms. Gavin, that you think the Court needs to
16 inquire into?

17     MS. O'CONNELL GAVIN: No. Nothing from the
18 government, Your Honor.

19     THE COURT: Mr. Szekely?

20     MR. SZEKELY: Nothing on our behalf.

21     THE COURT: Well, we will then await being advised by
22 counsel at the end of 45 days where are we in the case. And
23 then, as I say, perhaps by then, or at that point, you would be
24 able to tell me that you are agreed on an evaluation or you
25 have certain people available to make the mental health

1 evaluation and otherwise where we stand in the case and whether
2 if, for any reason, there is no plea that eventuates,
3 obviously, we have to set a timetable for the motion to
4 suppress and presumably look down the road to trial to see
5 where we are.
6     All right.  Is there anything else?
7         MS. O'CONNELL GAVIN:  No, Your Honor.
8         MR. SZEKELY:  Nothing, Your Honor.
9         THE COURT:  All right.  Thank you, Counsel.  That's
10 all we need to do.
11     (The proceedings were concluded at 3:08 p.m.)

1                     C E R T I F I C A T E

2

3           I, Renee A. Ewing, an Official Court Reporter

4 for the United States District Court for the District of

5 Maryland, do hereby certify that the foregoing is a true and

6 correct transcript of the stenographically reported proceedings

7 taken on the date and time previously stated in the above

8 matter; that the testimony of witnesses and statements of the

9 parties were correctly recorded in machine shorthand by me and

10 thereafter transcribed under my supervision with computer-aided

11 transcription to the best of my ability; and that I am neither

12 of counsel nor kin to any party in said action, nor interested

13 in the outcome thereof.

14

15

                 Renee A  Ewing
16
                 Renee A. Ewing, RPR, RMR, CRR
17                 Official Court Reporter
                 November 1, 2022
18