IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES : | |
| : | |
| : | |
| v. : | Case No. PJM-22-0209 |
| : | |
| NICHOLAS ROSKE : | |
| : | |
| Defendant : | |

**MOTION TO SUPPRESS WARRANTLESS SEARCH AND SEIZURE**

Nicholas Roske, the Defendant, by and through Andrew R. Szekely and Ellie Marranzini, Assistant Federal Public Defenders, hereby moves to suppress the warrantless search of Mr. Roske's backpack, suitcase, and a locked container in the suitcase and the seizure of these items' contents. In support thereof he states the following.

## INTRODUCTION

At 1:39am on June 8, 2022, Montgomery County 911 Dispatch received a call from a Nicholas Roske stating he was having thoughts of harming himself or others. Redacted 911 Call Transcript, Exhibit A at 2; Unredacted 911 Call Audio, Exhibit B.[1] Mr. Roske stated he had flown from California with an unloaded firearm that was locked in a case and that the case was inside a zip-tied shut suitcase. *Id.* at 2-3. He added that he had a backpack that did not contain any weapons. *Id.* at 3. When asked if he needed medical attention, Mr. Roske stated he needed "psychiatric help." *Id.* at 3.

Mr. Roske further disclosed that he had other weapons with him, also inside the zip-tied suitcase, but none were in his possession. *Id.* at 5. The dispatcher instructed Mr. Roske on how to act when the officers arrived, including by placing the suitcase and backpack away from where

---

[1] Mr. Roske made a very brief initial call to 911, hung up before providing any information, and called right back. This call is not included as an exhibit.

1

he was standing and making sure he had nothing in his possession except his clothing and cell phone. *Id.* at 3-7. At one point Mr. Roske asked if he should move further away from his bags. *Id.* at 4. When the dispatcher said he should, Mr. Roske stated he had done so and moved "about 20 yards away from the suitcase []." *Id.* at 5.

While Mr. Roske sat on the curb waiting for emergency responders to arrive, he continued to answer all the dispatcher's questions. *Id.* at 5-6. When the dispatcher asked "Okay. And why where you coming [to Justice Brett Kavanaugh's house]? Just to hurt yourself and him or what was going to be the plan?", Mr. Roske responded "Correct." *Id.* at 6.

As Mr. Roske stated he saw police coming, the dispatcher reminded him the importance of following the officers' commands. *Id.* at 11. Several Montgomery County police officers were dispatched to the area. Officer G.D. instructed Mr. Roske to put down his phone, stand up, and turn around. Officer J.W. Body Worn Camera Footage at 1:52-1:55, Exhibit C. Mr. Roske did so. *Id.* at 1:55. As officers approached, they could see that Mr. Roske had followed the dispatcher's instructions and moved away from his bags.



*Id.*

The responding officers then ordered Mr. Roske to lay down on the ground with his arms and legs "far apart". *Id.* at 1:53. Mr. Roske complied with the command.



*Id.*

After being placed in handcuffs and moved into a seated position, Mr. Roske continued to be cooperative with officers' questions and directives. *Id.* at 1:54 -1:55. Officers asked him where his bag was; Mr. Roske replied it was "down the street on the left it should be pretty obvious." *Id.* at 1:54 The officers then helped Mr. Roske to his feet and escorted him away from the scene of his arrest and towards several police cars. *Id.* at 1:55-1:57. Prior to being placed in the car, an officer searched Mr. Roske's pockets. *Id.* at 1:57-1:59.

While Officer L.C. questioned Mr. Roske at the police car, Officers R.B., S.Y., G.D., and others searched the suitcase and backpack. *See* Off. R.B. Body Worn Camera Footage Exhibit D, Off G.D. Body Worn Camera Footage Exhibit E. When Officer R.B. first arrived to assist, Officer G.D., one of the arresting officers, stated that an off-duty officer was with the luggage and that they should "go check his stuff for firearms." *Id.* at 1:55. Officers went to the luggage and asked

if they should search the items there or bring it back to the cars. *Id.* at 56. They were instructed to "very carefully search" the bags. *Id.*

First, Officer S.Y. searched the backpack. *Id.* at 1:58. Next, Officer S.Y. asked for a knife to cut the zip-tie. *Id.* Officer G.D., who had left Mr. Roske and driven to the luggage, cut the zip-tie and Officer S.Y. began to search the suitcase. Exhibit E at 1:59.



*Id.*

During the search, an officer took a key from a sweatshirt or jacket inside the backpack and handed them to Officer S.Y.



*Id.*

Using that key, Officer S.Y. open the gun case and recovered a Glock handgun.



*Id.* at 01:59-2:00.

Officers also recovered "burglary tools", a knife, pepper, spray, and Mr. Roske's wallet from the suitcase. *Id.* at 2:00-2:01. The searching officers began to photograph the firearm. *Id.* at 2:02. As they searched the suitcase, officers photographed the weapons and "burglars' tools", but did not take photographs of the clothing or other personal effects in the suitcase or backpack, which was searched earlier and contained no weapons. During the search, officers discussed the incident and noted that Mr. Roske had come alone. *Id.* at 2:05.

## ARGUMENT

Searches and seizures conducted absent a warrant based upon probable cause and issued by a judicial officer are *per se* unreasonable under the Fourth Amendment. *United States v. Ramapuram*, 632 F.2d 1149, 1153 (4th Cir. 1980) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). Where there has been a warrantless search and seizure, the government bears the burden of showing by a preponderance of the evidence that the search in question falls into a valid exception to the warrant requirement. *United States v. Block*, 590 F.2d 535, 539 (4th Cir. 1978) (citing *Bumper v. North Carolina*, 391 U.S. 543 (1968)).

Here, the government does not claim that there was a search warrant for any of the searched items. Thus, the search of the suitcase, backpack, and gun case along with the seizure of their contents are only lawful if the police officers' conduct fits within one of the narrow exceptions to the Fourth Amendment's warrant requirement. Mr. Roske expects the evidence presented at a hearing to show that the government cannot carry its burden in this respect. Therefore, the Court should suppress any items seized from Mr. Roske's suitcase, backpack, and gun case.

Respectfully submitted,

James Wyda
Federal Public Defender
 for the District of Maryland

\_\_\_/s/_____
Andrew R. Szekely (#16407)
Ellie C. Marranzini, #817525
Assistant Federal Public Defenders
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: (410) 962-3962
Fax: (410) 962-3976
Email: andrew_szekely@fd.org
        ellie_marranzini@fd.org