# EXHIBIT 10



**MONTGOMERY COUNTY**
**DEPARTMENT OF CORRECTION AND REHABILITATION**
**DETENTION SERVICES DIVISION**

POLICY AND PROCEDURE MANUAL

**POLICY NUMBER:    1300-24**

| Policy and Procedure:<br><br>**Operation of the Central Processing Unit** | | Pages:<br><br>**32** |
|---|---|---|
| Effective Date:<br><br>**May 1, 2022** | Replaces:<br><br>**December 30, 2019** | Distribution:<br><br>**B** |

APPROVED BY: _~Susan K. Malagari~_   **DATE: May 1, 2022**
<span style="font-size:smaller">Chief Administrator, Detention Services Division</span>

_Angela Talley_

APPROVED BY: _____   **DATE: May 1, 2022**
<span style="font-size:smaller">Director, Department of Correction and Rehabilitation</span>

Annual Review: 2022 Sgt. Brandon Ward

**POLICY:** The Montgomery County Department of Correction and Rehabilitation (**MCDOCR**), in conjunction with the Montgomery County Police Department (MCPD) and the District Court of Maryland, shall operate a Central Processing Unit (CPU) at the Montgomery County Detention Center to handle all persons arrested and/or in custody by local law enforcement agencies in the County. A major goal of the Central Processing Unit is to streamline the arrest process for the benefit of both police patrol personnel and correctional staff. The intended results of this activity are to provide more time for patrol officers to perform community policing strategies and to share mutual efforts to avoid dual processing for those persons who are later incarcerated.

## I.    GENERAL INFORMATION

A. Coverage: CPU personnel shall perform all tasks associated with the search, processing, and presentation before the District Court Commissioner of all arrestees brought to the Central Processing Unit. This coverage shall be provided continuously, 24 hours a day, seven days a week.

B. Personnel Assignments: One CPU Administrator, one CPU Administrative Sergeant and Correctional Officers shall be assigned full time to the CPU.

C. Adherence to Department Policies and Procedures: **MCDOCR** staff assigned to the CPU shall follow the guidelines provided in both Departmental and Detention Services Division Policies and Procedures. The Deputy Warden

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

(MCDC) shall be advised of any conflicts in Policy and Procedure between the Police Department and the Department of Correction and Rehabilitation.

D.    Chain of Command: The Correctional Officers shall be under the direct supervision of the CPU Administrator, the CPU Administrative Sergeant, or in his or her absence, the Shift Administrator and/or the Senior Correctional Officer on duty in the Unit who shall serve as the Senior Floor Officer.  The CPU Administrator is responsible for the overall operation of the CPU including all staff.

E.    Minimum Shift: The minimum staffing requirements for the CPU are as follows:

    #1 Shift – Sunday, Monday (4)
                Tuesday – Saturday (5)
    #2 Shift – Monday – Friday (5)
                Saturday, Sunday (4)
    #3 Shift – Monday – Friday (5)
                Saturday – Sunday (4)

    This staffing profile may be adjusted to meet changing work requirements as determined by **MCDOCR** Management Staff.

## II.    DUTIES AND RESPONSIBILITIES

A.    Duties of the CPU Administrator: The CPU Administrator assigned to the CPU shall perform the following duties:

1.    Supervises the overall operation of the CPU which handles the processing of all criminal and traffic arrests made by various law enforcement agencies in Montgomery County.

2.    Analyzes the process for booking arrestees to determine whether qualitative and quantitative goals and objectives of the CPU are met.

3.    Ensures monthly reports on the operations of the CPU are generated and forwards these reports via the **MCDOCR** chain of command.

4.    Reviews operational procedures for the CPU as needed and develops recommendations for improving operational efficiency.

5.    Oversees, and to some extent, carries out the duties and responsibilities for ensuring that the established goals and objectives of the CPU are achieved.

6.    Evaluates the daily operations against the established performance criteria developed by the County to determine the cost and operational efficiency of the CPU.

7.    Serves as a Systems Administrator for the CRIMS System.

8.    Serves as the department's liaison with the various law enforcement agencies and the District Court Commissioners.

9.    Reviews and prepares reports involving serious or unusual incidents in the CPU.

10.    Conducts inspections of the CPU facility as required.

B.    Duties of the Administrative Sergeant:
The Administrative Sergeant assigned to the CPU shall perform the following duties:

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

1. Assists the Administrative Lieutenant in monitoring computer activities and data analysis for the CPU
2. Coordinates efforts with the Police Records Unit in reviewing arrest reports for proper documentation and coding for criminal statistical purposes. Make corrections to arrest report data, as necessary.
3. Oversees and maintains the storage and archiving of past arrest reports
4. Answers the telephones and handles inquiries from the general public regarding operational procedures and/or the status of an arrestee's processing.
5. Assists law enforcement personnel in obtaining information and photographs from previous arrests.
6. Performs other administrative duties to facilitate the workflow of the Unit.
7. Performs other duties as assigned by the Administrative Lieutenant.
8. Serves as a Systems Administrator for the CRIMS System

C. Duties of the Senior Floor Officer: The Senior Floor Officer (Sergeant or Senior Corporal) assigned to each shift in the CPU shall perform the following duties:

1. Assists in supervising all officers assigned to the Unit. Observes the conduct and activities of these officers and initiates corrective measures to remedy inappropriate behavior.
2. Ensures that all officers are thoroughly briefed on their duties and responsibilities prior to assuming their posts.
3. Ensures that all outstanding warrants are verified and served on arrestees/defendants/inmates held in the CPU.
   **NOTE: Any questionable warrant to be served on a defendant must receive approval from the Senior Floor Officer before being served.**
4. Resolves problems associated with a defendant's identity or criminal/traffic charging documents.
5. Ensures that all paperwork is present, verified for accuracy, and checks the identity of the defendant before the defendant is presented for an arraignment hearing before a District Court Commissioner.
6. Reviews the arrest package and related documents for each defendant, verifying that all the paperwork is present, the defendant has been arraigned on all charges, and that a commitment or release from commitment order is present on all charges, prior to authorizing transfer (into the facility) or release from commitment of a defendant from the CPU.
7. Reviews all transfer from commitment or other applicable document and ensures the identity of any defendant that is transferred to another jurisdiction from the CPU.
8. Responsible for the overall basic security in the CPU. Makes certain that all security checks and other requirements are logged in the Daily Log during his/her tour of duty. Ensures security patrols are properly completed and logged during the shift.
9. Ensures that there is at least one officer on the floor always and is responsible for knowing the whereabouts of assigned personnel always, including when they leave the immediate area.

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

10.   Oversees the general operation and the maintenance of order in the Unit.  Monitors the conduct and movement of defendants and takes corrective action where necessary.

11.   Monitors and ensures the cleanliness of the CPU always.

12.   Makes certain that the Unit's daily log is accurate and properly maintained.

13.   Ensures that emergency equipment is checked for serviceability and logged in the Unit's Daily Logbook. Completes and forwards the appropriate reports (i.e. maintenance orders, incident reports) to the CPU Administrator/Shift Administrator on all inoperative and/or malfunctioning equipment.

14.   Responsible for making certain that all unusual incidents occurring in the CPU are documented.  Reviews all such reports for clarity and content. When necessary, instructs subordinate officers on how to improve their reports and then reviews all corrections. Ensures these reports are forwarded, when completed, to the Shift Administrator for final disposition and ensures copies are forwarded to the CPU Administrator.

15.   Ensures and passes on all relevant information to the oncoming shift.

16.   Ensures that a Suicide Prevention Screening Form and other mandatory documents are initiated and completed on every defendant committed to the Detention Center from the CPU.

17.   Confers with the CPU Administrator/Shift Administrator regarding any problems or situations which need further attention or approval.

18.   Ensures that Consular notification forms and requirements are met when appropriate for foreign nationals arrested and brought to the CPU. (Refer to Policy and Procedure 3000-54, Consular Notification and Access, for additional information.)

19.   Ensures that an injured arrestee report is initiated and completed for any defendant brought into the CPU with injuries. Confers with medical staff prior to accepting an injured inmate into the facility.

20.   Ensures that DNA procedures are followed for qualifying offenses and ensures that everything is verified and completed, if applicable.

21.   Ensures the proper process is followed regarding ICE Detainer Requests.


D.   Duties of the Correctional Officers Assigned to the CPU: The Correctional Officers assigned to the CPU shall perform the following duties:

1.   Accepts delivery of arrestees from law enforcement officers without undue delay and maintains custody of these arrestees until they are released from commitment, transferred to another jurisdiction, or incarcerated into the Detention Center.

2.   Accomplishes the arrest booking process in an accurate and timely manner.

3.   Thoroughly searches arrested persons for contraband upon arrival into the Unit. (Search Room)

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

4.   Immediately notifies the Senior Floor Officer of all contraband found during arrestee searches and records the discovery of the contraband on an Incident Report (DCA #36) and on the CPU Contraband Log.

5.   Gathers and verifies information that may be included on the arrest report and other documents before presenting the documents to a District Court Commissioner.

6.   Conducts and/or ensures that a check of Criminal History Record Information (CHRI) is obtained on all arrestees brought into the CPU. Ensures that identifying numbers are properly recorded on the Booking Checklist, warrants are requested and received from the appropriate jurisdictions and checks and/or ensures that wanted checks are conducted on all arrestees/defendants using a computer terminal to include at a minimum: METERS, MILES (A side), IJIS, JIS, MATS, Maryland Judiciary Records Search, and E*Justice.

7.   Conducts appropriate criminal record check on a detainee who is identified as having an ICE Detainer request.

8.   Photographs and fingerprints the arrestee/defendant/inmate and completes all related paperwork.

9.   Conducts routine patrols of the CPU to ensure the safety, security, and cleanliness of the Unit. Conducts shakedowns of cells and common areas in the Unit as required and records these in the Daily Log.

10.   Conducts a security round at least once every thirty (30) minutes in all areas of the CPU and documents the round in the Daily Log. Checks will be conducted at least every fifteen (15) minutes in cases where a suicidal or medical watch has been established.

11.   Conducts window/wall checks of all cells and common areas in the CPU at least twice per shift and records these in the Daily Log.

12.   Monitors the welfare and conduct of all arrestees in the CPU.

13.   Performs other duties as assigned by the CPU Administrator, Shift Administrator and/or Senior Floor Officers.

E.   Post Orders:
A copy of Central Processing Unit Post Orders shall be maintained in the Unit. The post order cites specific and general instructions for the operation of the Unit. They cannot, however, cover every incident or eventuality which may occur. Staff assigned to the CPU shall use good judgment, tact, and careful attention to detail in discharging their duties. If there is any doubt of the course of action, the officer should consult other security staff and/or a supervisor.

## III.   INFORMATION SHARING AND NOTIFICATION PROCEDURES

A.   Each correctional officer shall be responsible for notifying the Senior Floor Officer of any unusual incident in the CPU. The CPU Administrator and/or the Shift Administrator shall be immediately notified of any emergency which occurs within the Unit.

B.   Any incident or situation which threatens the security of the Unit or the safety of any person therein shall be documented by CPU staff. All such reports shall be submitted to the Senior Floor Officer for review before forwarding these reports

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

        to the on-duty Shift Administrator.  A copy of all such reports shall be retained in the CPU for the CPU Administrator's review.

C.    At the beginning of the shift, the off-going Senior Floor Officer and all other Correctional Staff shall brief the on-coming staff about important information, including but not limited to daily Unit activity, the status of defendants in the facility, defendants who require particular attention, and unusual situations/occurrences and work assignments.

D.    The smooth transition of the CPU requires that all Officers and Correctional staff communicate during each shift change.

E.    CPU Officers shall maintain an accurate and detailed daily log for this post.  A new log sheet is initiated at the beginning of each shift.  Log entries include such items as counts, security inspections, window/wall checks, equipment inventories, etc.  Any activity that is out of the ordinary must also be logged.

F.    CPU officers shall document all cases where a defendant expresses suicidal ideation, protective custody needs, or other relevant security issues on an Incident Report (DCA #36).  This information shall be passed on to the Senior Floor Officer who shall promptly notify the CPU Administrator and/or Shift Administrator.  The Senior Floor Officer should notify the CPU Administrator and/or the Shift Administrator and the R&D Officers if the defendant is later incarcerated and is escorted into the Detention Center.

G.    CPU officers shall initiate and complete a Suicide Prevention Screening Form on each arrestee committed to the Detention Center prior to escorting the arrestee into the Detention Center.

**IV.**   **HANDLING OF DEFENDANTS**

A.    Staff safety is the primary consideration when handling and processing arrestees/defendants. All staff shall adhere to applicable directives when interacting with any arrested person.  Staff engaged in processing arrestee/defendants shall be responsible for staff safety and for the condition of all areas of the CPU. Staff shall exercise caution when entering an occupied arrestee/defendant cell.

B.    Prior to accepting an arrestee/defendant into the secure portion of the CPU, staff shall ensure the arrestee/defendant is handcuffed (behind the back) and that the arrestee/defendant has been previously searched by a law enforcement officer.

C.    Upon entrance into the CPU search area, the arrestee/defendant shall be frisk searched again, before and after removing the handcuffs, by a CPU Officer. Two Correctional Officers and one (1) Law Enforcement Officer must be present always in the search area when a defendant is being searched and questioned. A CPU Officer will remove all handcuffs and leg irons if applicable. Evidence and/or contraband discovered during this search shall be turned over to the transporting officer for disposition.

D.    Placement of a Defendant in a Cell: Upon entering CPU if an arrestee/defendant is currently being processed, the defendant will remain handcuffed and placed in the CPU holding cell until Correctional staff are ready to process them.
        **Note: Female arrestees/defendants shall be considered a priority.**

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

1.   Prior to placing an arrestee/defendant into an empty cell, a CPU officer shall search the cell for contraband.
2.   Any arrestee/defendant under eighteen (18) years of age shall be placed in single cells away from adult arrestee/defendants.  More than one arrestee/defendant under eighteen (18) years of age may be placed in the cell together if a lack of space dictates the need.
3.   Female arrestee/defendants will not be placed in cells with male arrestees/defendants and visa versa.

**Note: Under NO circumstances shall an arrestee/defendant under eighteen (18) years of age be placed in a cell with an adult arrestee/defendant.**

4.   Shoes, hooded garments, pantyhose, caps, belts, ties, drawstrings, and similar articles shall be removed from the arrestee/defendant before placing the arrestee/defendant into a cell.  No metal objects will be allowed in the cells (i.e. jewelry, clothing with metal attached, etc.)

E.   Special Situations:
1.   A juvenile charged as an adult or for whom Juvenile Court jurisdiction has been waived shall be processed in the same manner as an adult.
2.   Arrestees/defendants who pose a hazard to the health or safety of themselves, other arrestees/defendants, or staff or who are under the influence of any drug or alcohol shall be housed separately.
3.   Aggressive, unruly, or disruptive arrestees/defendants may be placed in a holding cell and handcuffed to the bench. Officers may also consider securing the arrestee/defendant in the Pro-Straint Chair, with approval of the CPU Administrator or Shift Administrator.

F.   Use of the Video camera:
1.   The CPU is equipped with a portable video camera which should be used to record the actions of disruptive arrestee/defendants/inmates, unusual incidents, etc.
2.   Procedures for using the video camera are detailed in Detention Center Policy and Procedure 1300-21, Videotaping Significant Incidents.  Prior to using the video camera, the Senior Floor Officer should contact the CPU Administrator or Shift Administrator to alert him/her to the situation at hand as well as the possible need for additional staff assistance.
3.   The CPU Officer shall be responsible for inventorying the video camera and its accessories at the beginning of each shift and for recording this check in the Daily Log.

G.   Injured Arrestees:
1.   Arrestees/defendants who have noticeable serious injuries or self-report serious injuries upon their arrival to the CPU must receive a medical evaluation and clearance from a hospital prior to being accepted into the CPU.  Paramedic's clearance alone is not sufficient.
2.   If an injured or intoxicated/impaired arrestee/defendant is brought into the CPU without a clearance a Detention Center nurse will be notified and asked to respond to CPU to examine the arrestee/defendant.

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

       Arrestees/defendants determined by the nurse to need outside medical attention will not be accepted in the CPU.

3.     The Senior Floor Officer or designee and the nurse will complete an "Injured Arrestee Report" form in all cases where a nurse is summoned to CPU to check on the health status of an arrestee/defendant. This form will be used to document the arrestee/defendant's injury/medical complaint, the summons of a nurse, and the action taken by the nurse to review the arrestee's/defendants' health condition.

4.     Arrestees/defendants who are severely intoxicated or significantly under the influence of drugs will not under any circumstances be accepted into the CPU until they have received medical clearance from a hospital. The Senior Floor Officer may accept arrestees/defendants into the CPU who may have consumed alcohol or other drugs, but who are not in need of assistance to walk and who can understand the booking process. Senior Floor Officers may wish to consult with a nurse to make this decision.

5.     If an arrestee/defendant becomes extremely sick or requires outside medical attention while in the CPU and is incapable of appearing for the initial hearing, a District Court Commissioner shall be notified. In these cases, CPU staff shall coordinate with the arresting officer or other personnel from the station of arrest to make suitable arrangements. Transports from the CPU to hospitals are the responsibility of the arresting officer's jurisdiction, unless the arrestee/defendant has appeared before a District Court Commissioner and is already committed to the Detention Center. In this case, the transportation of the arrestee/defendant is the responsibility of the Montgomery County Sheriff's Department.

H.     The Senior Floor Officer shall ensure that CPU staff maintains a current and accurate location of all arrestee/defendants/inmates in the CPU always. Staff shall maintain the accuracy on an electronic locator board which indicates the presence and status of each arrestee/defendant/inmate in the Unit. The name and any information of any arrestee/defendant released from or escorted out of the CPU shall be removed from the locator board as soon as the arrestee/defendant has exited from the CPU.

I.     Staff shall only use physical force in accordance with the established guidelines (see P&P 1300-10, Use of Force, Chemical Agents and Restraints.) Except in cases of emergency, the CPU Administrator or Shift Administrator must be notified whenever the use of force is required. In situations where there is an immediate need, such notification shall take place when the situation is brought under control. ONLY the CPU Administrator, Shift Administrator, or higher authority shall authorize a planned use of force and/or the use of restraint equipment to either move or restrain an unruly or uncooperative arrestee/defendant/inmate.

J.     On occasion, an arrestee/defendant/inmate may have to be restrained to stop his/her disruption of the normal arrest booking process. The Senior Officer will notify the CPU Administrator, Shift Administrator, or higher authority prior to any situation where an arrestee/defendant/inmate is to be restrained, in any manner.

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

K.    Each staff member who is involved in a use of force incident must submit a written report (DCA #36) detailing why the use of force was necessary and what force was used (by the staff member) to accomplish the assigned task. Witnesses to the use of force by staff may also be required to provide written reports.

## V.   SECURITY PROCEDURES

A.    The transporting law enforcement officer shall secure his/her firearm(s) prior to entering the CPU. The law enforcement officer shall secure his/her firearm(s) ███████████████████████████████████. The law enforcement officer shall then █████████████████████████ Law Enforcement Officers are to ensure that███████████████████████████████████. Law Enforcement Officers may retain, on their person, their pepper spray, TASER, and ASP batons.

B.    Upon admission into the secure portion of the CPU, each arrestee/defendant and his/her personal possessions shall be thoroughly searched by a CPU Officer.

C.    CPU staff shall conduct a defendant count at each shift change to identify the status and location of each defendant in the Unit. Discrepancies between the defendant count and the defendant status on the electronic board shall be immediately addressed and resolved.

D.    Access to the CPU shall be limited to authorized personnel only. No arrestee/defendant/inmate will be allowed to have visitors in the CPU**. No immigration enforcement agent or official shall be permitted inside the non-public areas of CPU.**

E.    Holding cells shall always be locked whether occupied or not. All holding cells and common areas shall be inspected at the beginning of each shift by the Officers assigned to the CPU. These inspections shall be documented in the unit's Daily Log.

F.    All gates/entrances shall always be secured except to affect the transfer of defendants and personnel into and out of the CPU.

G.    Arrestees/defendants/inmates in the CPU shall always be secured except when being searched, fingerprinted, or photographed. No arrestee/defendant/inmate shall be left unattended at any time while outside a holding cell.

H.    Cell Searches:

1.    Searches of cells and other areas within the CPU shall be performed on an unannounced and irregular schedule. These searches are necessary for the safety and security of the unit and patterning must be carefully avoided. This type of search is designed to uncover contraband, prevent escapes, maintain sanitary standards, and eliminate fire and safety hazards. The search must be conducted in an orderly manner to be thorough.

2.    All instances of vandalism to cell areas shall be documented.

3.    All items of evidence, contraband, or recovered property discovered during a search shall be confiscated and turned over to the Senior Floor

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

Officer.  The officer making the discovery shall submit a written report describing the contraband and stating where and when the contraband was found.  This report must be submitted prior to the end of the officer's shift.

I.    Controlled Dangerous Substance (CDS) Evidence:

1.    Evidence of this nature recovered during the initial frisk search shall be turned over to the transporting police officer.  The Senior Floor Officer and the CPU Administrator and/or the Shift Administrator shall be promptly notified of the discovery.  The CPU Officer who confiscated the contraband shall be responsible for documenting the discovery on the appropriate CPU contraband form and on an Incident Report. (DCA #36).

2.    In cases where this type of contraband is discovered in the CPU during a search of an arrestee/defendant where the transporting officer is no longer present in the CPU, the CPU Senior Floor Officer shall contact the arresting officer and request them to respond back to CPU to take possession of the contraband.

3.    In cases where CDS evidence is discovered in CPU, but not in possession of a person or in property belonging to a person, staff shall turn the evidence over to the Shift Administrator for proper handling.

4.    MCDOCR will not accept any medical marijuana or medical cannabis, in any form, as personal inmate property. Any such substance will be treated as contraband and handled according to currently established procedures.

J.    Weapons:

1.    CPU staff are responsible for keeping the common areas and cell areas neat and clean of debris and items that could be used as weapons.  Officers removing an arrestee/defendant/inmate from a cell or holding area shall search the area for weapons and other types of contraband that the arrestee/defendant/inmate may have left behind.

2.    Weapons recovered during a search are to be confiscated, packaged in a clear heat sealable bag, and secured.

K.    Key Control:

1.    Security keys to the CPU are to be used by authorized personnel only.

2.    The CPU Administrator and/or the Shift Administrator shall be immediately notified of any key loss.

L.    Confidential Information:

Staff shall ensure that confidential records pertaining to persons processed in the CPU are safeguarded from general view.  Criminal records information shall not be left unattended in the processing area or removed from the CPU without proper written authorization.

M.    Movement of Arrestees/Defendants:

1.    Officers shall verbally inform fellow staff and other authorized persons in the area prior to moving an arrestee/defendant/inmate from one location to another in the unit.  The maximum number of arrestees/defendants/inmates allowed outside of the holding cells or secured otherwise in the CPU at any time shall ALWAYS be equal to or

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

fewer than the number of CPU Officers present in the unit and on the main level.

2. Arrestee/defendants/inmates shall be escorted by an Officer whenever they are not secured in a holding cell or otherwise secured in the CPU. All arrestees/defendants/inmates must be escorted by two Officers when moving to and from an arraignment hearing.

N. CPU staff shall always closely monitor and supervise the activities of arrestees/defendants/inmates within the unit.

O. CPU staff shall submit an Incident Report (DCA #36) on any defendant committed to the Detention Center who expresses current suicidal thoughts has a history of suicidal behavior or presents any kind of danger to themselves or others. A DCA #36 shall also be submitted on any committed defendant who is deemed to need special security precautions.

## VI. ARRESTEE/DEFENDANT/INMATE PROCESSING

A. Admission Procedures:

1. Law enforcement agency personnel shall search arrestees prior to arrival at the CPU and secure all contraband and weapons.

2. CPU Officers shall meet the arresting officer near the entrance and immediately take custody of the arrestee/defendant and their property. CPU staff shall be responsible for the safety and security of the arrestee/defendant once he/she has been searched in the search area by a CPU Officer and accepted for processing into the CPU.

3. Law enforcement agency personnel may assist CPU personnel with the search of the arrestee upon arrival into the search area at the CPU. They shall also take into custody any contraband, evidence, or weapons found during the search by CPU personnel.

B. Verifying and Securing an Arrestee/Defendant's Personal Property:

1. Whenever an arrestee/defendant is brought into the CPU, all non-evidentiary property of the defendant shall be turned over to CPU personnel and the transporting officer shall assist in the preparation of a documented property inventory. The personal property of an arrestee/defendant will be accepted based on the following guidelines:

   a. The CPU Officer shall search all property that is accepted and ensure that the property is entered into the CRIMS System. Property will only be listed into the CRIMS System. After being searched, property of value (jewelry, watches, keys, cell phones, etc.) shall be placed in a clear plastic bag and sealed by the CPU Officer. The CPU Officer will write the arrestee's/defendant's name on the clear plastic bag. If the transporting officer brings in a property bag that is sealed, the bag must be opened, and the contents searched. Clothing not being worn, along with the clear plastic bag, will be placed in a CPU blue clothing bag and secured until the arrestee's/defendant's release from the CPU or transfer into the **MCDC.**

   b. No weapons, tools, scissors, or other sharp objects will be accepted into the CPU at any time.

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

     c.    All weapons/tools and/or excess property will be returned to the transporting officer for disposition according to the transporting agency/officers department directives. Arrestees/defendants shall be made aware of any item not accepted into the CPU and that the items will be stored or disposed of in accordance with the transporting officer's department directives. CPU Officers should encourage the transporting officer to relay to the arrestee/defendants what the disposition of these items will be.

     d.    Any questions regarding whether to accept an arrestee's/defendants' personal property should be referred to the CPU Senior Floor Officer for resolution.

.

2.    Procedures for Handling Arrestee/Defendant Monies:

     a.    At the time of admission into CPU, an arrestee's/defendant's monies will be separated from all other personal property.

     b.    The CPU Officer will open a Keefe account using the **MCDOCR** number generated by CRIMS and then observe the arrestee/defendant deposit the money into the Booking Kiosk located in the search room. Two receipts will then be dispensed from the Kiosk. One receipt will be given to the arrestee/defendant and the other receipt is to be placed in the arrestee/defendant folder.

     c.    The CPU Officer will enter the money total from the Keefe total into the CRIMS System.

     d.    Any coins not accepted by the Kiosk (i.e. Foreign Currency, bus or game tokens etc.) will be placed in the clear plastic bag and sealed with the rest of the arrestee's/defendant's personal property.

3.    Once the defendant's money and property have been verified and the property has been sealed, custody and responsibility of the property is transferred from the transporting officer to the CPU Officer.  At this point the CPU Officer is responsible for taking control of the clear plastic bag and clothes and placing them in the secure CPU property room for safekeeping.

C.    Strip Searching a Defendant:

1.    If at time of admission the transporting officer indicates there is probable cause and wants to conduct a strip search of an arrestee/defendant for contraband, the arrestee/defendant will be escorted to the female isolation hallway area by a CPU Officer.

2.    The transporting officer NOT THE CPU OFFICER, will then conduct the strip search as the CPU Officer stands by to witness the search.

3.    CPU Officers will conduct a strip search of an arrestee/ defendant only if there is probable cause to do so as determined by the CPU Administrator or Shift Administrator.

4.    The CPU Officer will submit a written report whenever a CPU Officer conducts a strip search of a defendant or witnesses a strip search conducted by the transporting officer.

D.    Special Assistance for Hearing Impaired and Non-English-Speaking Arrestees:

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

1.  Whenever a hearing-impaired person is brought to the CPU for arrest processing, CPU staff shall routinely ask the person whether he/she wishes to have the services of a sign language interpreter.

2.  If the hearing-impaired person requests an interpreter, staff shall immediately access the interpreter service.  If the person declines the offer, staff shall document the declination on a written statement and have the person sign the statement.  The statement shall then be placed in the arrest package.

3.  When accessing the sign language service, staff must first call the contracted sign language service provider.

4.  Language interpreter services shall also be obtained as necessary for non-English speaking persons brought to the CPU for arrest processing. Correctional Staff certified by the County in a non-English language may act as an interpreter.  At no time will other defendants/inmates be used for this purpose during the CPU process.

E.  Basic Processing Procedures:
As part of the arrest processing, CPU staff shall at a minimum perform the following tasks:

1.  Complete a Booking Checklist and enter the arrestee's/defendant's name and other applicable information in the Central Processing CRIMS jail management database.

2.  Check the wanted status of the arrestee/defendant through the computer terminal to include METERS, CJIS, MILES (A-side), IJIS, JIS, Secure Case Search, and E*Justice, and MATS.  If any or all these systems are down, contact the Montgomery County Police Records/Warrant Section and request them to conduct the checks on these systems. If the Warrants section does complete these checks, the CPU staff must ensure that they receive a copy of these checks from the Warrant/Records section, prior to the arrestees/defendants/inmates' arraignment before a District Court Commissioner.

3.  Conduct checks of Criminal History Record Information (CHRI).

4.  Fingerprint the arrestee using the computer systems located in the CPU or on hard fingerprint cards in cases where the system goes down or if there is any other need to produce hard ink copies (i.e. complications with an arrestee's fingerprint being recognized by the computer system.)

F.  Photographing the Arrestee:
The arrestee shall be photographed using the digital camera system in conjunction with the CRIMS System.  Whenever the digital camera is not functional, photographs shall be taken using another camera that may be available.

G.  Fingerprinting the Arrestee:

1.  The arrestee shall be fingerprinted using the Morphotrak computer fingerprint machine. Whenever the laser fingerprint machine is not functioning, fingerprints shall be taken using the standard ink method.

2.  All required information shall be typed or legibly written on the fingerprint cards if the arrestee is fingerprinted using the ink method.

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

3.     The CPU Officer taking the fingerprints shall legibly sign and document their employee identification number on the print cards and verify that all the information documented on the card is accurate and complete.

**NOTE:  Rejection of Arrestee's submitted Fingerprint Card means no record of the charge(s) is established in the computerized Federal and State criminal history records. Staff shall take all steps necessary to ensure that each fingerprint is properly captured.**

4.     When transmitting fingerprints via fax machine to another agency (i.e. the FBI), the CPU Officer should do the following:
   a.     Ensure that the quality of each print is acceptable.  The prints must be clear, lack smudges, and be neither too dark nor too light.
   b.     Document all required information on the print card and include special circumstances/requests on the transmittal page. For example, John Doe is being held on suspicion of murder and must be charged within five (5) hours.
   c.     Contact the agency after one (1) hour of transmittal and ask for a status check.  Record the name of the person contacted as well as the date and time.  Provide the name and telephone number of the CPU Officer to be contacted should additional information be requested.
   d.     Place all documents pertaining to the examination, to include the fax cover sheets, into the corresponding Arrest Booking Package.

H.   Establishing Identity of an Arrestee: It is incumbent upon both the arresting officer and the CPU staff to determine the identity of an arrestee before he/she is presented to the District Court Commissioner.  Positive identification shall be made by comparing known identification numbers such as MCPID, SID, and FBI associated with the arrestee with identification numbers generated via fingerprint analysis.  If there is any question about an arrestee's identity, the arrestee's fingerprints should be sent to the Maryland Automated Fingerprint Identification System (MAFIS) for comparison and verification.  If an individual is arrested in error (i.e. identified not to be the wanted person), CPU shall notify the arresting officer and turn over custody of the arrestee/defendant so that the individual can be released in an expeditious manner.

I.   Outstanding/Active Warrants:
   1.     If it is determined that an outstanding/active warrant exists for an arrestee being processed, CPU staff shall immediately call the appropriate agency to have the warrant faxed to the CPU.  The processing of the defendant shall continue up and through the arrival of the warrant.
      a. If the warrant is serviceable upon the arrestee the warrant shall be copied by a designated CPU Officer and served upon the arrestee. The hard copy of the warrant shall be supplied to a District Court Commissioner, a copy of the warrant shall be placed in the arrest booking package and the arrestee shall receive a copy of the warrant.

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

    b. If the warrant is not serviceable, CPU staff shall generate a detainer notification and provide copies in the arrest booking package. If the arrestee is later committed and escorted into the Detention Center, a copy of the detainer and warrant shall also be sent into the facility for records section purposes.

2.    CPU personnel shall coordinate all activities (i.e. confirming the arrestee in custody, placing "locates") regarding warrants with the MCP Warrant Section or other Law Enforcement agencies, as applicable.

3.    On occasion there will be situations where outstanding warrants will need to be served on individuals already incarcerated in the Detention Center. In those situations, Records staff shall coordinate the transfer of the inmate to the CPU with Detention Center and CPU staff.

4.    Whenever an outstanding warrant for an **MCDOCR** inmate is received in the CPU, a "Jail Service Warrant Alert" form will be completed by CPU staff to document receipt of the warrant. This form is used to notify **MCDC** Records Staff that the inmate cannot be released until the warrant is served.

    a.) The "Jail Service Warrant Alert" form will then be completed and faxed to the **MCDC** Records Section. The form will include the inmates name, aliases, ID Number, date, time, basic warrant information, and the CPU Staff member name and ID Number.

    b.) The CPU Staff member shall then contact an **MCDC** Records Section Staff member to alert them that a copy of the form and warrant was faxed to the **MCDC** Records Section and to confirm that the Records Section Staff member is in receipt of the form. The CPU Staff member shall record this communication by recording the Records Section staff members name and ID Number on the alert form.

    c.) The alert form will then be attached to the warrant and placed in the designated tray for future processing.

        **Note: Records Staff shall be responsible for determining and coordinating with Detention Center staff as to when the inmate will be escorted to the CPU.**

    d)  When the inmate has been escorted into the CPU, the warrant has been served on the inmate, and the inmate has been arraigned before a District Court Commissioner on the warrant, the Records Section must be contacted to advise them that the warrant has been served.  This is completed by a CPU Staff member completing the "Notification of Warrant Service" section of the "Jail Service Warrant Alert" form.  The form will then be faxed to the Records Section along with a copy of the commitment/release from commitment.  The CPU staff member should then contact a Records Section staff member and ensure receipt of this information.

    e)  If a commitment or a release from commitment order is issued on the warrant, the original copy will be placed in a Jail Intake folder and taken into the Detention Center and given to the Intake Control Officer for Records Section purposes.  A copy of the

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

commitment/release from commitment will be placed in the Arrest Booking Package.

5.     Unattainable Montgomery County Warrant
   A.     This is a warrant that cannot be attained and served on the defendant for any reason. For example:
      1.     The warrant is in the court system, but the warrants section does not have the hard copy to fax.
      2.     The Montgomery County Police Officer has the hard copy of the warrant, but the Officer cannot be located, etc.
   B.     After the Senior Floor Officer or designated Officer in CPU has made every attempt to locate the Montgomery County active warrant, he/she should take the following steps:
      1.     Access the module under "UNATTAINABLE WARRANTS" on the computer.
      2.     Click the "ADD WARRANT" tab to add the new warrant/record
      3.     Complete this section in its entirety (defendant's information/contact information)
      4.     Click the "ADD RECORD" tab, this will automatically save the record
      5.     Click "CLOSE FORM"

      There is a "NOTES" section available in this section if there is additional information that needs to be documented.

   C.     Once the Unattainable Warrant is faxed or brought in by a Montgomery County Police Officer, the Senior Floor Officer or designated Officer in CPU will make sure the warrant is served on the arrestee/defendant. If the arrestee/defendant has been committed to the Facility on other charges he/she shall be brought to the CPU as a Jail Service on this warrant.
   D.     After the warrant has been served on the defendant, the Senior Floor Officer or designated officer shall do the following:
      1.     Access the "UNATTAINABLE WARRANTS" tab under the module on the computer.
      2.     Click the "SERVED WARRANT" tab
      3.     Locate the arrestee/defendants name and click the "SERVED WARRANT" tab (far right side), and this will populate the date and time which the unattainable warrant was served.
      4.     Click "CLOSE FORM" and the information will be saved
   E.     If the wrong defendant was clicked in the computer as being served, click the "SERVED WARRANT" tab again and this will undo the date and time information.
   F.     The CPU Administrative Sergeant and Lieutenant will check the status of the unattainable warrant module daily.
   G.     Tab Functions

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

      1. "CLOSED WARRANT" tab – is used for reviewing all closed warrants.
      2. "WARRANTS" tab – is used for reviewing all warrants that were lodged in the system as an unattainable warrant
      3. "REPORT" tab – is used for reviewing all warrants information.

6. Upon conclusion of the arrestee's appearance before the District Court Commissioner, the CPU staff member completing the arrest report shall insure that a completed warrant copy with corresponding District Court Commissioner's results is faxed back to the appropriate agency.

J. Police Interviews with already committed Detention Center Inmates in the CPU:

1. A Law Enforcement Officer who has in his/her possession an active warrant for an inmate already incarcerated in the Detention Center may request to interview that inmate about the new charge(s) in the CPU as part of the arrest process.

**Note:** If the inmate is no longer housed in the Montgomery County Detention Center, the law enforcement officer shall be informed that they will need to interview the inmate in whichever facility the inmate is presently housed.

2. If the inmate is housed in the Detention Center, CPU staff will coordinate the inmate's escort to the CPU for the interview with the law enforcement officer and, if applicable, process the warrant in the regular manner.

    a) The Law Enforcement Officer can only interview the inmate if they are in possession of an unserved warrant and the inmate has not already appeared before the Commissioner on the warrant.

    b) Upon arrival in the CPU, the inmate will be placed in a room (private setting) if available and the Law Enforcement Officer may conduct the interview.

    c) The inmate remains in the care and custody of Montgomery County Department of Correction and Rehabilitation (**MCDOCR**) If the inmate refuses to talk to the Law Enforcement Officer, CPU staff shall inform the Law Enforcement Officer that there will be no interview.

    d) If the inmate voluntarily elects to speak to the Law Enforcement Officer, CPU Staff must complete a "Consent to Interview" form, have the inmate sign the form, and then forward the form to the **MCDC** Records Section.

    e) The inmate can be interviewed for a reasonable time and may decide at any time to discontinue the interview.

3. Law Enforcement interviews of Montgomery County Detention Center inmates in the CPU will be restricted exclusively to the situation detailed above. At no time will a Law Enforcement officer be permitted to use the CPU to bypass the Montgomery County Detention Center legal/professional visiting procedures and/or use of the professional interview rooms or other requirements necessary to conduct an interview of an inmate incarcerated in the Detention Center.

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

          4.     <u>**Immigration Enforcement Officials will not be permitted within the non-public areas of any County Facility, including CPU, MCDC, or MCCF, in order to conduct an investigation or interview of an individual in furtherance of a civil immigration enforcement operation**</u>.

K.    Processing Arrestees/Inmates scheduled for release with Intra-State Detainers: Any arrestee brought into the CPU and/or any inmate in the Montgomery County Detention Center scheduled to be released who is subject to an intra-state detainer shall be handled as follows.

          1.     <u>In cases where an inmate has a detainer based on a warrant that may be served in Montgomery County, the inmate shall be transferred to the CPU for service of the warrant</u>.

                  If the Detention Center Records Unit has the warrant it will be faxed to the CPU at that time.  If the warrant has not been received from the other jurisdiction, CPU staff shall contact the issuing agency(s) to have the warrant faxed to the CPU for service.  In cases where the inmate is held in default of bond on the warrant, the Commissioner will issue a commitment to the Detention Center for the continued confinement of the inmate.  The inmate shall then be returned to the Detention Center to be held until such time that the bond is satisfied, or the requesting jurisdiction responds to take physical custody of the inmate.

          2.     <u>When CPU takes custody of an arrestee with no local charges, but has an intra-state detainer (criminal matter), which is not serviceable in Montgomery County</u>:
CPU staff shall secure the arrestee in a holding cell to await pickup by the other jurisdiction.  The Senior Floor Officer shall then immediately call the other jurisdiction and ask for an estimated time of arrival to pick the arrestee up and immediately notify the CPU Administrative Lieutenant. If the arrestee is not picked up at the agreed time, the Senior Floor Officer will notify the CPU Administrative Lieutenant. All such notifications shall be documented in the following manner: the name and ID# of the Senior Floor Officer making the calls, the time of the calls, the name and ID# of the person(s) notified, and the estimated time(s) of arrival received from the other jurisdiction.

L.    <u>Processing Inmates via Interstate Agreement on Detainers (IAD)</u>:
Only warrants where <u>Montgomery County</u> is the court of jurisdiction can be served on an inmate brought to the CPU via an Interstate Agreement on Detainers.

                  **Note:  Warrants from jurisdictions other than Montgomery County cannot be served on an IAD inmate because each jurisdiction is required to file its own detainer for the defendant**

M.    <u>Processing Fugitives from Justice</u>:

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

An arrestee brought into CPU who is wanted by a law enforcement agency outside of Maryland can be processed as a "Fugitive from Justice" via the following procedures:

1.  A "hit" confirmation from the demanding jurisdiction must be obtained prior to charging the individual as a Fugitive from Justice.  When charging an inmate from the Detention Center as a Fugitive from Justice, an accurate "hit" confirmation, extradition request, or teletype must be requested from the demanding agency.
    If a "hit" confirmation is not in the NCIC computer, a "hit" confirmation must be done by the Arresting Officer via a teletype through ECC.  A request should be made to ECC asking that an administrative message be sent to the demanding jurisdiction requesting if that agency still wants the individual and if they will extradite from the State of Maryland. This is an acceptable manner to receive confirmation that the individual is still wanted by the requesting agency.

    **NOTE:**  Again, the "hit" confirmation must be received by CPU staff prior to charging the individual.

2.  Complete the Fugitive from Justice Charges using the proper District Court forms.

3.  Attach to the original charging document one of the following:
    a)  A copy of the warrant and affidavit from the demanding jurisdiction, or
    b)  A copy of the teletype or computer printout (hit confirmation) used as the authority for the arrest.

4.  Process the fugitive the same as all other arrested persons by:

    a)  Completing an Arrest Booking Package.  This information will be entered into CRIMS as an Arrest Warrant.
    b)  Note the demanding jurisdiction and charge in the narrative of the arrest report--e.g., Fugitive from Justice, Armed Robbery, Fairfax Co., Va.
    c)  Have the defendant arraigned before a District Court Commissioner.

        **Note:  The District Court Commissioner will generally not issue a bond on any fugitive.  The fugitive will be incarcerated and appear before a District Court Judge at the next session of bond hearings.  Defendants who are charged with offenses punishable by life imprisonment or death are not eligible for bond in the State of Maryland.**

5.  Under no circumstances should any arrestee be turned over to officers from another state until the subject has appeared before the Maryland Court system and has been advised by a <u>Judge</u> of his/her rights under the extradition laws and the arrestee has signed a waiver of extradition.

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

6.  CPU staff will confirm extradition on any inmate brought to the CPU for "Jail Services" prior to charging the inmate as a Fugitive from Justice. When the **MCDC** Records Unit has notified CPU staff of a pending detainer that is outside the State of Maryland, CPU staff will take the necessary steps to confirm with the outside agency that they will extradite the inmate from Montgomery County.  If confirmation is received and the agency agrees to extradite, CPU staff will handle all necessary paperwork (i.e. charging documents).  The inmate will then be escorted to CPU to be charged and processed as a Fugitive from Justice and be presented for arraignment before a District Court Commissioner.

> **Note:  All Fugitive from Justice charging papers must be signed by a sworn officer (i.e. Correctional Officer with the Powers of Arrest, Montgomery County Police Officer).**

N.  Arrestees/Inmates with ICE Detainer/Requests:

1.  If an arrestee has an ICE detainer (request), the proper procedure will be followed to determine if the ICE request is valid.

2.  If an arrestee with a valid ICE request is brought into the CPU for processing on local criminal charges and is given a personal bond (or posts bond) on the local charges, the arrestee will be released into the community following notification to ICE of the pending release, pursuant to established procedure.  **The arrestee will be held no longer than is reasonably necessary to efficiently and properly conclude all discharge procedures.**

> **Note:  Copies of the ICE detainer/request shall be provided to a District Court Commissioner before the arrestee is arraigned on the local charges.  A copy of the ICE detainer/request must be immediately provided to the arrestee.**

3.  If an arrestee is brought into the CPU with a valid ICE request and for processing on other criminal charges and is issued a commitment on the other criminal charges, the arrestee will be transferred into the Detention Center, under normal procedures.  The arrestee/inmate will then be housed in the Detention Center until the criminal charges are satisfied through the court system.  When applicable, **MCDC** Records Section will follow established procedures regarding ICE requests.

> If an arrestee is brought into the CPU with an ICE request that is deemed to be not valid pursuant to procedure, the individual will be held or released in accordance with procedures as if there was no ICE detainer.

4.  If ICE agents arrive to take custody of an individual with an ICE request, the established procedures shall be followed.

O.  Arrestees Released Without Charge:

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

In the event it is determined that an arrestee who was being processed in the CPU is identified as: NOT the wanted person, the following procedures are to be initiated:

1.      The CPU Senior Floor Officer shall contact the Arresting Officer or his/her station to inform him/her of the event, as it is their practice to initiate a police information report documenting the incident.  A DCA #36 is to be placed inside the Bad Arrest Booking Binder and a copy stapled to the CPU-513 stating the following:

      a)      Wrong defendant in custody.
      b)      CPU officer making the notification and to whom the notification was made (i.e. Arresting Officer).
      c).     Date and time of notification.

2.      Any "Statement of Charges" shall be shredded by the CPU Senior floor Officer. The CPU Arrest Booking Package, including all related documents, is to be retained, under normal handling procedures in the CPU, to show a paper trail.

3.      Any arrestee who does not compare favorably to the physical and/or biographical description of a "wanted person" shall be brought to the attention of the CPU Senior Floor Officer.  The CPU Senior Floor Officer shall handle all matters related to deciding on whether to serve warrants where descriptions may be of issue.  If the CPU Senior Floor Officer decides that the warrant will not be served, he/she shall contact the law enforcement officer who effected the arrest and apprise them of the discrepancy and then the Senior Floor Officer makes a decision as to whether the arrestee should be released without charge or, if applicable, retained for submission of prints for FBI and/or MAFIS examination.

4.      The arresting officer or their agency (sub-station) shall be contacted and asked to respond to CPU and pick-up an arrestee where CPU staff has decided there are no outstanding/active warrants for the arrestee, or the arresting officer may communicate to the CPU Senior Floor Officer to release the arrestee.

5.      The arrestee shall be released from the CPU to the arresting officer as soon as possible.  If the arresting officer does not arrive within a short period of time, the CPU Senior Floor Officer may release the arrestee and all related paperwork will be forwarded to the CPU Administrative Lieutenant.

6.      If the arrestee's information has been entered into the CRIMS System, the CPU Senior Floor Officer shall release the record by exception from the system.

P.      Court Ordered Fingerprinting:

1.      Defendants who have been previously charged with a criminal offense through use of criminal citations or District Court summons are required to be fully processed if they are found guilty.  The District Court and Circuit Courts of Maryland have a procedure in place whereby such defendants shall be issued a Court Order for Fingerprinting by the presiding Judge.  The defendant shall be given a form by the presiding Judge which directs the defendant to contact CPU staff via telephone to

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

       arrange an appointment for his/her appearance to complete this process. Copies of these orders, in most cases shall be faxed to the CPU by the courts.

2. The Order for Fingerprinting will be placed in the file tray designated for that purpose, pending further disposition and arrival of the defendant to the CPU.

3. When arriving to the CPU for court ordered fingerprints the defendant must bring valid/recognized photo identification for proper verification. If the defendant fails to bring a valid identification, the defendant will not be allowed into the CPU for processing.

4. If the proper paper (Court Order) is present, he/she will be escorted into the CPU, searched, processed in CRIMS as an Arrest Warrant, and an Arrest Booking Package will be completed.  If the paperwork is not present, the defendant will not be allowed into the CPU for processing. The reason for fingerprinting shall be clearly indicated on the Arrest Booking Package and fingerprint cards as: Court Ordered Fingerprinting and list the primary charge.

5. The defendant shall be processed as soon as possible and shall not be secured with any other arrestees in custody but may be temporarily placed in a single cell until the processing begins.

6. When the individual has been entered into CRIMS, a Criminal History Check has been completed, the arrestee is photographed, and fingerprinted; the return portion of the Court Order will be filled out by a CPU Officer and signed by the defendant, then faxed back to the District Court.

       **Note:  If it is discovered during the Criminal History Check that the defendant has an open/active un-served warrant or another "warrant" is identified in the criminal history databases, CPU staff may take steps to comply with the "warrant", including but not limited to, contacting the Rockville Police station and request that an MCP Officer report to CPU to make an arrest of the defendant.  Correctional Officers with the Powers of Arrest may also affect these arrests if one is present in the CPU.  If an arrest of the defendant is made, CPU Staff will process the defendant as a new arrestee**

7. When all steps of the booking process have been completed, the defendant shall then be given back their property and escorted out of the CPU.  Defendants who are processed in CPU only for an order for Court Ordered Fingerprinting do not remain in the CPU, awaiting the positive identification of the fingerprints.

8. When the fingerprint verification has been received in the CPU, CPU staff shall release the record from the CRIMS System database under the category "Released Own Recognizance."

9. If a defendant fails to appear for Court Ordered Fingerprinting by the date listed on the Court Order, CPU staff will likewise complete the return portion of the Court Order and fax it back to the District Court.

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

Q. Statement of Charges:

1. Law enforcement officers shall use the CRIMS case processing computers at the CPU to complete their Statement of Charges. CPU staff will assist law enforcement officers in the use of the CRIMS when necessary.

2. Law enforcement officers shall ensure that the Statement of Charges are completed in a timely and accurate manner and will separate their Statement of Charges as directed.

3. When these documents are completed, the law enforcement officer will give all the documents to the CPU Senior Floor Officer for a basic review and presentation to a District Court Commissioner. The CPU Officer will ensure that an additional copy of the Statement of Charges is placed in the Pre-Trial Services/Public Defender Unit box.

## VII.  ARRAIGNMENT

A. When all requirements of the booking and processing of an arrestee have been completed, and after fingerprint identification has been received the arrestee shall be brought before a District Court Commissioner for an initial hearing. Arrestees shall be scheduled for the hearing by CPU staff, in coordination with the District Court Commissioner after fingerprint identification has been received. Aside from special or unusual circumstances, it is the goal of CPU staff that arrestees should normally be <u>scheduled</u> for the initial hearing within four (4) hours of arrival in the CPU.

B. CPU Officers shall provide the necessary security for the arrestee's appearance before the District Court Commissioner.

**Note:  Arraignments for arrestees who are untractable, disorderly, or who pose a potential threat to themselves or others may be held while the arrestee is in a cell, to protect the welfare of all involved persons.**

C. Arrestees released by a District Court Commissioner shall be given a reasonable opportunity to use the telephone at the end of the appearance to arrange for transportation from the CPU.

D. Any committed and tractable arrestee will be given the opportunity to make a two (2) minute telephone call to arrange bond after appearing before the Commissioner. Additional calls may be made by the arrestee if they do not make bond before being escorted into the Detention Center. CPU Senior Floor Officers shall ensure adherence to this rule to control the number of arrestees that are not secured in a room at any given time while in the CPU.

E. Upon completion of the initial hearing before a District Court Commissioner the CPU Senior Floor shall review the Arrest Booking Package for the specific arrestee to ensure for accuracy and completeness of information required in the package. The CPU Correctional Officer shall fax all copied (criminal/civil/traffic) warrants that were served on the arrestee back to the appropriate jurisdictions.

**Note:  In cases where an Arrest Booking Package only consists of traffic or civil warrants, a CPU Officer shall fax all copied warrants back to the appropriate jurisdiction.**

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

F.    When entirely completed, the arrest packages shall be turned over to the CPU Senior Floor Officer for release from the CRIMS system.

G.    CPU staff shall also be responsible for the disposition of arrestees after the initial hearing before the District Court Commissioner (i.e. commitment to the Detention Center or release from commitment).

## VIII.    DEFENDANT HEALTH AND HYGIENE

A.    All arrestees shall be provided access to toilet facilities, a wash basin, and drinking water.

B.    Personal Medications - If an emergency presents itself, a Detention Center Nurse shall be summoned to CPU or R&D and asked to provide medical assistance.  The request for medical assistance shall be made by a CPU or R&D Officer.

1.    Although new arrestees are not authorized to carry medications on their person there are three exceptions if authorized by nursing staff.  These exceptions include albuterol inhalers, nitroglycerine tablets, and nitroglycerine spray.

   a. Albuterol - Albuterol is a medication that is used primarily for asthma.  Albuterol inhaler is marketed under names that include Ventolin HFA, ProAir HFA, RespiClick HFA, and Proventil HFA.

   1.   Nursing staff must be contacted immediately after an arrestee uses an albuterol inhaler so that the arrestee can be assessed and to determine if a hospital referral is necessary.

   2.   New arrestees who present to the CPU carrying an albuterol inhaler are authorized to carry it on their person while in the CPU after receiving approval from nursing staff.

   b. Nitroglycerine - Nitroglycerine (NTG) is a vasodilator that is used for patients with coronary heart disease.  The quick acting forms come in tablet and spray formulations.

   1.    Sprays are used by spraying on or under the tongue.

   2.    Tablets are used by to be placing under the tongue, or between the cheek and gum.  Nitroglycerine tablets are stored in a dark-colored, airtight glass container.  Although glass and metal are considered contraband in the facility arrestees and inmates are authorized to carry this glass container on their person while in CPU, and if committed throughout his or her incarceration due to the necessity of this medication and because there are no other safer storage containers available on the market.

   3.   It is imperative that nursing staff be notified any time an arrestee uses nitroglycerine so that the arrestee can be assessed and to determine if hospital referral is necessary.

   4.   New arrestees who present to the CPU carrying nitroglycerine tablets or spray are authorized to carry it on their person while in the CPU after receiving approval from nursing staff.

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

**NOTE:** Even though this policy specifically addresses two specific medications, there may be instances when a nurse may authorize an arrestee to carry on his/her person a medication that nursing staff determines to be vital for the person's well-being.

C. Arrestees having visible injuries or complaining of a condition requiring medical attention shall be brought to the attention of the Senior Floor Officer. It shall be the responsibility of the Senior Floor Officer to contact a nurse to request an evaluation of the subject. The nurse shall respond to CPU and shall in turn determine if an arrestee's injuries or condition require in-house or hospital treatment.

**Note: When an arrestee enters CPU with discharge medical paperwork, the Senior Floor Officer will be responsible for notifying the medical staff to report to CPU to review the medical discharge documentation.**

D. Whenever a medical problem arises with an arrestee in the CPU and the arresting officer has already departed, the CPU Senior Floor Officer shall contact an **MCDC** nurse for assistance. The nurse shall provide treatment, as indicated. If the nurse determines that the arrestee needs emergency hospital treatment, the CPU Senior Floor Officer shall contact the arresting officer or their appropriate District Station to arrange for transportation to the hospital. If the arrestee has already been arraigned and committed to the Detention Center by a District Court Commissioner, the Montgomery County Sheriffs Department will be contacted by the CPU Senior Floor Officer and asked to conduct the transportation. In either situation the CPU Administrative Lieutenant shall be notified. If the CPU Administrative Lieutenant is off duty, the **MCDC** Shift Administrator will be notified.

E. If it has been over eight (8) hours since the arrestee/defendant has been brought into the CPU and they have not been arraigned by a District Court Commissioner yet, a bag meal shall be ordered for that arrestee/defendant for the next designated mealtime. If an arrestee/defendant has been arraigned in front of a District Court Commissioner and has been committed into the custody of the **MCDOCR**, a bag meal shall be offered while they are waiting for transfer into the **MCDC**. This process can be adjusted depending on the time of the transfer into **MCDC** and the designated mealtime.

F. All arrestees housed in cells shall be visually observed by a CPU Officer at a minimum of once every 30 minutes. These security checks are recorded when the Officers conduct rounds and log them in the Daily log when the security round system is inoperable. Rounds may be conducted in shorter increments, if the need presents itself (i.e. suicide watches).

G. A first aid kit and other emergency equipment are maintained in the CPU. Designated staff members shall be responsible for the daily and other required inspections and inventories and for re-supplying these items. All emergency equipment shall be inventoried and inspected daily for presence and serviceability. These inventory and equipment checks shall be recorded in the Unit daily log.

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

H.    CPU staff is to undertake appropriate preventive measures to ensure their welfare and health when dealing with arrested persons.  Officers are to use protective gloves (i.e. latex) when interacting with arrestees during frisk searches, fingerprinting, etc.  When an officer feels it appropriate, he/she may use a face mask as a preventive measure when dealing with known or obviously sick arrestees, such as those suffering from suspected or reported tuberculosis or other respiratory illnesses.

I.    Medical Emergencies:

1.    Arrestees/Inmates in the CPU complaining about an illness or injury shall be given a medical assessment by Medical staff prior to being secured into a holding cell.

2.    In cases of medical emergencies, ECC shall be notified, given a description of the medical problem, and a request will be made for the response of a Rescue Unit and police to transfer the defendant to the nearest available medical facility.

3.    If the police have not arrived to take custody of the arrestee by the time the Rescue Unit is ready to transport, and the situation is potentially life threatening, the CPU Administrator or Shift Administrator shall assign two Correctional Officers to accompany the arrestee to the medical facility.  In these cases, the CPU Senior Floor Officer shall request temporary staffing assistance from the CPU Administrator or Shift Administrator to avoid the potential temporary shutdown of the CPU.

4.    The CPU Senior Floor Officer shall then notify the originating District Station, provide information about the incident, and request assistance to provide coverage at the medical facility to relieve Correctional staff.

## IX.    EMERGENCY PROCEDURES

A.    In an emergency not involving an attempt to escape, such as a fire, the CPU Senior Floor Officer shall immediately notify all CPU staff and the CPU Administrator and/or the Shift Administrator.

B.    An emergency evacuation plan is posted for the CPU at the exit from the Unit. In an emergency requiring an evacuation, all defendants shall be handcuffed and escorted from the Unit by members of the CPU staff and other Detention Center staff

C.    In the event of an evacuation, arrestees/inmates shall be secured with handcuffs and leg irons.  Whenever possible, arrestees/inmates shall be sheltered in place within the secure confines of the Detention Center.

D.    Defendant Escape Plan: Procedures to be followed by the CPU staff in response to an attempted or successful escape from the CPU facility shall include:

1.    Immediately informing the CPU Senior Floor Officer of the incident and providing the following information:

a.    Name of escaped arrestees/inmates
b.    Physical and clothing description
c.    Purported dangerousness of the escapee

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

       d.     Nature of current charges

       f.     Possible destination, if known

       g.     Other pertinent information which may aid in apprehension.

   2.     CPU staff shall then follow the procedures outlined in the Detention Center's Emergency Plan Manual.

## X.   RELEASE OF DEFENDANTS

A.    Arrestees who have been released from commitment after arraignment before a District Court Commissioner and do not have any other outstanding charges shall be escorted from the CPU when all necessary paperwork has been completed and the arrestee has received and signed for all their personal property. Before any arrestee is released from the CPU, the CPU Senior Floor Officer shall review all paperwork relating to the arrestee's processing to include at a minimum: the Arrest Booking Package, the Booking Checklist, commitment orders, release orders or other personal bond documents from the Commissioner, the arrestee's photograph and fingerprint cards, METERS and other records check printouts, warrants information, fingerprint identification verification, and other information which can be used to determine if the release is appropriate. If any discrepancy is found, the CPU Senior Floor Officer shall take immediate action to investigate the problem. No arrestee shall be released from the CPU without the CPU Senior Floor Officer specifically authorizing the release and adding their signature to the Arrest Booking Package indicating the same.

B.    Upon release of the arrestee from the CPU, the arrestee and a CPU Officer shall each sign the Arrest Booking Package, acknowledging the return of all the arrestee's personal possessions. Should the arrestee decline to sign the form, the CPU Senior Floor Officer shall try and solve the issue. If after intervening and the arrestee still refuses to sign the package, the CPU Senior Floor Officer shall write "refused to sign" in the signature space, initial the refusal and deliver the property to the arrestee.

C.    Arrestees shall be escorted by a CPU Officer and released through the Law Enforcement entrance/exit door of the CPU.

D.    Defendant Transportation from the CPU:

   1.     Arrested persons lacking transportation from the CPU may qualify for a taxi voucher which allows the individual to return to one of the County Police District Stations. The destination is to be either the station from which the arrestee was originally picked up or to the District Station closest to the subject's place of residence. It shall be the Senior Floor Officer's decision as to which of the two shall be selected. (See also P&P 1300-12, Receiving, Temporary Release, and Discharge.)

   2.     Officers are to immediately advise the Senior Floor Officer of any arrested person subject to release who lacks transportation from the area. This is to occur only after all other alternatives have been exhausted.

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

    3.    The CPU Officer shall obtain a taxi voucher for the person who is eligible and then contact the contracted cab company to respond to the CPU.

    4.    At the end of each month, taxi vouchers shall be verified and forwarded to the Senior Financial Specialist for payment.

## XI.    TRANSFER OF ARRESTEES FROM THE CPU

A.    Arrestees who are arraigned and committed to the Detention Center shall be placed in a designated cell pending transfer.  The Intake Control Officer will be notified whenever arrestees are ready for transfer and will coordinate the transfer with the R&D and CPU Officers. **Note: All arrestees will be expeditiously transferred into the facility within one hour after being committed by a District Court Commissioner.**

B.    Prior to the arrestee's/defendant's transfer into the **MCDC**, the CPU Officers shall search their clothing and shoes for any contraband that may have been missed during the initial search. The arrestee's/defendant's personal property shall be searched for any unauthorized items. (i.e. tobacco products, lighters, glass items, gum etc.). If there are any unauthorized items, they shall be removed from the arrestee's/defendant's property and disposed of in the CPU contraband box. These items will not be returned.

C.    Upon transfer of an arrestee to another agency, the arrestee's property shall be given to the receiving agency and a notation made on the CPU-513 as well as CRIMS to include the date, time, identity, and station of the officer taking custody of the arrestee shall also be recorded on the Arrest Booking Package.

D.    A CPU Officer shall verify the identity of any arrestee subject to transfer through a comparison of the digital photograph generated during processing.

## XII.    REGISTRATION OF SEXUAL OFFENDERS

A.    Upon notification by a Detention Center Records Unit staff member that an inmate needs to be registered as a sexual offender, CPU staff shall arrange for the inmate to be brought to the Unit.  Records Unit personnel shall then complete the appropriate registration form and forward it to the CPU.

B.    A Records Manager, the CPU Administrator, or the on-duty Shift Administrator shall read the registration form to the inmate and have him/her sign the form to acknowledge his/her responsibilities for registration under the law.  The Records Manager, the CPU Administrator or the on-duty Shift Administrator shall also sign the registration form where indicated.

C.    A CPU Officer shall fingerprint the inmate using the MorphoTrak finger printing system and shall also take one photograph of the inmate. The CPU Officer who completed the fingerprint process must sign the MorphoTrak signature pad.

D.    The fingerprint cards, photographs, and completed registration forms shall then be forwarded back to the Records Unit for final disposition.

## XIII.    DATA INFORMATION SYSTEMS

A.    All employees are responsible for protecting the integrity of data in the CPU.

B.    Prior to vacating a computer station, each employee shall ensure that access to confidential information is controlled and that he/she has logged off the computer terminal or has locked the computer.

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

C.     CPU shall utilize the CRIMS database for information collecting, storing, retrieval, reporting and review.  The system shall be capable of delivering information useful for profiling the individual served by the facility and identifying trends in the referral and intake system.  It shall also be capable of delivering demand information which can be generated when special or periodic reports are required.

**XIV.   MISCELLANEOUS ISSUES**

A.     Physical Maintenance of the Unit:
  1.     The CPU Administrator and/or the on-duty Senior Floor Officer shall ensure that the CPU facility is properly maintained on a regular basis.
  2.     CPU personnel who become aware of maintenance, cleanliness, or safety problems in the Unit shall report these problems to the CPU Administrator and/or a Shift Administrator.  The CPU Administrator and/or Shift Administrator, in turn, shall ensure that an electronic Maintenance Request (DCA-28) is submitted, when applicable.
  3.     Janitorial services shall be handled by a designated inmate worker who meets Detention Center security requirements.  The inmate is responsible for the performance of all routine maintenance and sanitation needs of the CPU and shall respond as requested by CPU staff.  The inmate worker's activities shall always be directly supervised and closely monitored.  The inmate shall not be permitted to take trash out the back door without an Officer to escort the inmate.  The inmate worker shall be strip searched every time the inmate has completed his job assignments in the CPU and just prior to being sent back into the Detention Center.  These searches will be documented in the CPU Strip Search Log.
  4.     A Toxic Substances Logbook is maintained to record the distribution and use of toxic substances such as bleach, ammonia, etc., in the Unit. CPU staff will ensure this log is updated.

B.     Office Supplies:
  The CPU Administrator shall ensure that adequate office supplies are continually on hand for the daily conduct of work.  CPU personnel who become aware of deficiencies in supplies should make the CPU Administrator aware of the item(s) in need of replenishment.  The CPU Administrator shall then be responsible for replenishing the stock of necessary supplies.

C.     No Smoking Policy:
  The CPU is a tobacco free environment.  No smoking or chewing of tobacco shall be allowed by <u>any person</u> while in the CPU.  Vaping is also prohibited.

D.     Requests for Information:

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

      1.    There may be periodic requests generated by the public or the media for information concerning arrestees being processed in the CPU.  Such requests shall be honored but limited to the following:  identity of the arrested person.

      2.    Criminal charging information is not released on any arrestee being processed in the CPU until arraignment by the District Court Commissioner is completed.  After the arraignment has been completed CPU staff may share the actual charges, age of the arrestee, bond information, and arresting officer's name and assignment.  Any additional information requests must be addressed to the Public Information Officer (PIO) of the **MCDOCR**, currently this assignment is designated to the Director.

E.    Attorney Representation During Bond Review:

      1.    An arrestee's attorney has the right to be present during his/her client's bond review before the Commissioner.  In these cases, the attorney will be allowed in the Commissioner's Office and shall follow the District Court Commissioners polices for the hearing.  At no time will the attorney be allowed into the other secure portion areas of the CPU.

      2.    Prior to permitting the attorney access inside the Commissioners' area, CPU staff shall verify the identity of the attorney to the extent possible and shall also inform the Commissioner of the attorney's presence (see Maryland State Bar Association's Maryland Lawyers Manual).

      3.    The attorney shall then be screened with a hand-held metal detector for security reasons.

      4.    CPU staff shall promptly notify the CPU Administrator or a Shift Administrator whenever a problem arises involving an attorney's identity or request to gain access to the CPU.  The CPU Administrator or a Shift Administrator shall review the situation and decide whether the individual will be permitted inside the Unit.

F.    Criminal Charges filed by a Defendant/Inmate:

      1.    In any incident where a defendant/inmate indicates that he/she wishes to pursue criminal charges against another defendant/inmate or a staff member, a Supervisor will interview the defendant/inmate and document the interview, then forward this information to the CPU Administrative Lieutenant.

      2.    If the defendant gets released from the CPU after the arraignment hearing with the District Court Commissioner and they still wish to pursue criminal charges, the defendant will be instructed that they can speak with the District Court Commissioner on the public side of the District Court Commissioners Office once released. A defendant cannot file charges while in the CPU.

      3.    If committed to **MCDOCR**, the inmate will be required to give their complaint to the Montgomery County Police. This allows the **MCDOCR** to provide investigatory information to the Police Officer in his/her consideration of the charges. This also eliminates any opportunity for

Case 8:22-cr-00209-DLB    Document 74-10    Filed 02/24/25    Page 32 of 33
**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

inaccurate or frivolous complaints to be acted upon by the criminal justice system.

4. The inmate will need to submit a request slip (DCA 6) notifying that they wish to pursue criminal charges and describe any details of such a request. The request slip is then forwarded to the Deputy Warden of Custody and Security who reviews it and has his/her Office Services Coordinator document in a log that it was received. (The log notes the inmate's name, ID number, date complaint received, date it was forwarded to MCPD, and inmate's release/court date). The request is then scanned and forwarded via e-mail to the on-duty Captain or Lieutenant at the District 5 (Germantown) Police station for **MCCF** or the District 1 (Rockville) Police Station for **MCDC**. The Police Department will review the request and they will make a determination, based on what is written by the inmate, if they will move forward with the request and respond to interview the inmate. This action provides a method to place accountability for statements made by the inmate.

5. If a false statement is made to the Police during the investigation, **MCDOCR** will seek criminal charges against the inmate.

6. If the inmate is to be released before a year and a day has passed from the date of the alleged offense, the Police can recommend that the inmate seek criminal charges upon their release. It is the responsibility of the inmate to resubmit the request should their time in confinement exceed the year and a day requirement.

G. Detention Center Inmates Signing Bond Papers in the CPU:

State law requires that any defendant who wishes to post a pretrial bond must personally appear before a Commissioner to sign the bond papers as a prerequisite to the legality of the bond.  What this means is that any inmate in **MCDOCR** whose bond is posted must appear before a Commissioner in the CPU to sign the bond papers before the inmate can be released from custody. To meet this requirement, the following operational procedures have been implemented:

1. After a bond for an inmate has been posted, the Commissioner at the CPU will notify CPU staff that an inmate's bond has been posted and that the inmate must sign the required paperwork before release.  If the inmate refuses to sign the bond papers, the inmate will not be released.

2. CPU staff will complete and fax a "Bond Notification Form" to the Detention Center Records Unit.  The Records Unit will arrange transportation from **MCCF** TO **MCDC (if necessary)** to ensure that the inmate signs their bond release. R&D staff will arrange to have the inmate sent to the CPU. Regardless of where the inmate is housed (**MCDC** or **MCCF**) a "Bond Notification" form must be sent to the Records Section.

Bond releases that are generated from daily bond hearings are brought as a group to the CPU.  A Commissioner from CPU is present, so the inmate can sign the bond papers in their presence.

3. After the inmate signs the bond papers in front of the Commissioner, CPU staff will return the inmate to their housing unit.

**POLICY & PROCEDURE: Operation of the Central Processing Unit**
**POLICY NUMBER: 1300-24**

4. The Commissioner at the CPU will then issue a "Release from Confinement" order. CPU staff will fax the "Release of Confinement" to the Records Unit.

5. Upon receipt of the release order, Records Unit staff will alert Detention Center staff that the inmate's bond has been posted on that case(s) and if appropriate that the inmate can be released. The inmate will then be processed for release from the R&D Area in the normal manner. If the inmate is awaiting transfer to another jurisdiction or needs to be charged as a Fugitive from Justice, Records Unit staff will also initiate such action at that time.

6. Once notified that an inmate's bond has been posted, both CPU and Detention Center staff will act promptly to get the defendant released within a reasonable period of time.

**XV. DEFENDANT CASE RECORDS**

A. An accurate record of defendant information shall be maintained in the CPU. Information contained in these files shall be released only to persons so authorized by appropriate rules and regulations.

B. Information pertaining to an arrestee shall be maintained in the Arrest Booking Package.

C. Maintenance and storage of CPU arrest records shall be the responsibility of the CPU Administrator. No unauthorized persons shall have access to these records.

D. Release of information in an arrestee's file shall be restricted to CPU personnel and others on a need-to-know basis only. Exceptions may be authorized only by the CPU Administrator.