

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Thomas M. Sullivan*
*Assistant United States Attorney*
*Chief, National Security and Cybercrime*
*Thomas.Sullivan@usdoj.gov*

*6406 Ivy Lane*
*Suite 800*
*Greenbelt, MD 20770*

*MAIN: 301-344-4433*
*FAX: 410-962-3091*

GAAC/4.2.25

April 3, 2025

**BY ECF**

Honorable Deborah L. Boardman
United States District Judge
District of Maryland
6500 Cherrywood Lane
Greenbelt, Maryland 20770

                Re:   *United States v. Nicholas John Roske*,
                        Criminal No. DLB-22-209

Dear Judge Boardman:

      In light of the Defendant's, Nicholas John Roske, decision to plead guilty to the Indictment filed in the above referenced case without the benefit of a plea agreement, this letter sets forth the minimum and maximum statutory penalties of incarceration, fines, and terms of supervised release for the offense to which the Defendant seeks to plead guilty. This letter also addresses a number of matters the Government submits will be relevant to the Court's Rule 11 inquiry.

Offense of Conviction

      1.     The Government understands that the Defendant intends to plead guilty to the Indictment now pending against him, which charges him with one count of Attempting to Assassinate an Associate Justice of the Supreme Court of the United States, in violation of 18 U.S.C. § 351(c). The Defendant admits that the Defendant is, in fact, guilty of that offense and will so advise the Court.

Elements of the Offense

      2.     The elements of the offense to which the Defendant will plead guilty, and which this Office would prove if the case went to trial, are as follows:

      That in or about the time period alleged in the Indictment, in the District of Maryland and

elsewhere,

  a.  The Defendant attempted to kill the victim;

  b.  The victim was a justice of the United States, as defined in 28 U.S.C. § 451.

Penalties

3.  The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 351(c) | n/a | Life | Life | $250,000 | $100 |

  a.  Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

  b.  Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

  c.  Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

  d.  Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

  e.  Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

  f.  Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law.

Waiver of Rights

4.      The Government submits that, by pleading guilty, the Defendant surrenders certain rights as outlined below:

      a.      If the Defendant had pleaded not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, the Government, and the Court all agreed.

      b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

      c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

      d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

      e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

      f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right to appeal the sentence. By pleading guilty, the Defendant should understand that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

      g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further

trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

   h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization.  If the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status.  Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States.  Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant should understand that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status.

Factual and Advisory Guidelines

   5. The Government submits that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998.  The Defendant should understand that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

   6. Below are the Government's preliminary guideline calculations.  Given that there is no plea agreement in this case, there also is no agreement as to the applicable offense levels or criminal history category.  The offense levels set forth below are intended only to assist the Court at the Rule 11 proceeding, and do not bind the Government in any way.  The Government may argue in favor of a different offense level at sentencing.

   7. The Government submits that the Factual Allegations set forth below and incorporated by reference herein, satisfies the elements of Count One.  The Government submits that that the applicable United States Sentencing Guidelines ("U.S.S.G.") calculation for Count One is as follows:

   a. The applicable base offense level for Count One is **33**, pursuant to U.S.S.G. §§ 2A2.1(a).

   b. Because the offense was a felony that involved, or was intended to promote, a federal crime of terrorism, the offense level is increased by **12** levels, and the Defendant's Criminal History Category shall be VI, pursuant to U.S.S.G. §§ 3A1.4(a) and (b).

   c. The adjusted offense level, before any adjustment for acceptance of responsibility, is **45**.

Acceptance of Responsibility

8. The Government does not expect to oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. The Government may make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. The Government submits that the Defendant's final adjusted offense level, after adjustments for acceptance of responsibility, would be **42**.

9. The Government may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) denies involvement in the offense; (ii) gives conflicting statements about the Defendant's involvement in the offense; (iii) is untruthful with the Court, the Government, or the United States Probation Office; (iv) obstructs or attempts to obstruct justice prior to sentencing; (v) engages in any criminal conduct between the date of this Letter and the date of sentencing; or (vi) attempts to withdraw the plea of guilty.

Forfeiture

10. The Government will request that the Court, upon acceptance of the Defendant's guilty plea, enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

11. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Government will seek forfeiture to the United States all of the Defendant's right, title, and interest in the following items recovered from the Defendant that constitute money, property, and/or assets derived from, obtained by the Defendant as a result of, or involved in, the Defendant's illegal activities:

  a. Glock 17 firearm, serial number BTMH315;

  b. Two Glock magazines containing approximately 10 rounds each of 9mm ammunition;

  c. Approximately 17 rounds of 9mm ammunition contained in a plastic bag;

  d. Black speed loader;

  e. Streamlight TLR4 light and laser, serial number 1220183560;

  f. Pair of black hard-knuckled tactical gloves;

  g. ComfortTac belly band holster;

  h. Black tactical chest rig with pepper spray and black Gerber knife;

  i. ASP-Micro TM160 thermal imaging monocular, serial number ]25159811;

  j. Black face mask; and

  k. Lock picking and burglary tools.

Factual Allegations

 12. The Government believes that the facts below establish the elements of the charged crime. If the Defendant had not elected to plead guilty, the Government would have proven the following facts beyond a reasonable doubt had this matter proceeded to trial, and may introduce these facts at sentencing:

 At all times relevant, the Defendant, **Nicholas John Roske** ("**Roske**"), was a resident of Simi Valley, California.

 In or before the late spring of 2022, **Roske** developed a plan to assassinate one or more Associate Justices of the Supreme Court of the United States ("the Associate Justices"). In furtherance of that plan, **Roske** conducted multiple searches on the internet between about April 20, 2022, and June 5, 2022, for the residential addresses of the Associate Justices and for information on firearms, techniques for breaking and entering a residence, ways to avoid detection, stabbing a person, especially in the neck, strangulation, killing a person in a quiet manner, and how to travel by air with weapons. **Roske** also purchased multiple items and tools to use in his planned attack.

 On May 25, 2022, **Roske** purchased shooting glasses, hearing protection, a rail mounted tactical light with laser sight, a handgun cleaning kit, and tactical gloves from an online retailer. **Roske** also sent a message to another user on an encrypted online messaging application, stating: "The thought of Roe v Wade and gay marriage both being repealed has me furious."

 On or about May 27, 2022, **Roske** sent messages over an encrypted online messaging application to another user in which he told the user about his intention to kill one or more of the Associate Justices. Among other things, **Roske** stated:

- "people have killed judges before"
- "im gonna stop roe v wade from being overturned"
- "remove some people from the supreme court"
- "yeah but i could get at least one, which would change the votes for decades to come. and I am shooting for 3"
- "so you think if the SC were all liberal the roe would still be overturned?"

6

- "yeah but at the end of the day biden still chooses the replacements. gop cant do shit about it"

That same day, **Roske** purchased a Snap Gun Lock Pick, which is a tool that can be used to open a residential door without a key. The next day, on May 28, 2022, **Roske** purchased a pair of tactical gloves. Two days later, he purchased non-slip grip socks, black body and face paint, black duct tape, a glass cutter, and a heavy-duty suction cup.

On June 2, 2022, **Roske** purchased a Glock 9 millimeter Model 17 pistol from a gun store in Camarillo, California. The following day, June 3, 2022, **Roske** went to a shooting range in Simi Valley, California, where he purchased pepper spray and shooting targets, and practiced shooting a pistol on the range.

On June 4, 2022, **Roske** booked a one-way flight from Los Angeles International Airport ("LAX") to Dulles International Airport in northern Virginia. **Roske** also saved a map on his Google account that contained location pins marking the residential addresses of Associate Justices in Maryland and northern Virginia.

On June 5, 2022, **Roske** returned to the shooting range and purchased a lock box for the Glock pistol. **Roske** also purchased, online, a pry bar, screwdriver, and a 34-piece lock picking set.

On or about June 6, 2022, **Roske** conducted a search on the internet for "windows how to wipe down a drive." **Roske** also received a confirmation email from the encrypted messaging application Discord, indicating that his request to delete his account had been received.

On June 7, 2022, **Roske** checked into his flight at LAX. He completed the necessary paperwork for traveling by air with an unloaded firearm in his checked baggage. Upon arrival at Dulles Airport shortly before midnight, **Roske** retrieved his checked suitcase and then took a taxi to the Montgomery County, Maryland residence of an Associate Justice.

At approximately 1:05 a.m., two Deputy United States Marshals, who were guarding the Associate Justice's residence, saw **Roske**, dressed in black clothing and carrying a backpack and a suitcase, get out of the taxi in front of the residence. **Roske** looked at the two Deputy Marshals, who started to get out of their parked vehicles, and then turned and walked down the street.

Shortly thereafter, **Roske** called the Montgomery County Emergency Communications Center. **Roske** told the call taker that he was having suicidal and homicidal thoughts, that he had a firearm in his suitcase and that he had come from California to kill the Associate Justice. The Montgomery County Police Department officers were dispatched to the location near the Associate Justice's residence where they located **Roske**, who was still on the telephone with the Montgomery County Emergency Communications Center. The officers took **Roske** into custody as well as the backpack and suitcase he brought from California. The suitcase and backpack contained, among other things, the following:

    a. black tactical chest rig;
    b. tactical knife;
    c. a Glock 17 pistol;

    d. two Glock magazines, each containing 10 rounds of 9 millimeter ammunition;
    e. a plastic bag containing 17 rounds of 9 millimeter ammunition;
    f. pepper spray;
    g. zip ties;
    h. a hammer;
    i. 2 screwdrivers;
    j. a nail punch;
    k. a crow bar;
    l. tactical gloves;
    m. a thermal imaging monocular;
    n. a lock pick set;
    o. a pistol light;
    p. duct tape; and
    q. hiking boots with padding on the outside of the soles.

After being transported to a Montgomery County Police Department station, a detective advised **Roske** of his *Miranda* rights. **Roske** indicated that he understood his rights, agreed to speak with the detective, and signed a written waiver. **Roske** then told the detective that he was upset about the leak of a recent Supreme Court draft decision regarding the right to abortion as well as the recent school shooting in Uvalde, Texas. **Roske** indicated that he believed the Associate Justice that he intended to kill would side with Second Amendment decisions that would loosen gun control laws. **Roske** stated that he began thinking about how to give his life a purpose and decided that he would kill the Associate Justice. **Roske** admitted that he had purchased the Glock pistol and the other items in his suitcase and backpack for the purpose of breaking into the Associate Justice's residence and then killing the Associate Justice as well as himself.

**Roske** also advised that while he was in the taxi on his way to the Associate Justice's residence, he had texted his sister, telling her that he loved her. He further stated that after he arrived and got out of the taxi, he "noticed immediately that there were people sitting outside and this was a very like empty neighborhood, so I was like, okay, clearly they're keeping a lookout." The individuals sitting outside of the residence were the two Deputy United States Marshals protecting the Associate Justice's residence. Roske stated that due to the "lookout," he walked another way. His sister then called him, after which he called 911.

After advising **Roske** of his *Miranda* rights and **Roske** again waiving those rights in writing, FBI agents conducted a second interview of **Roske** on June 8, 2022. Among other things, **Roske** admitted again that he had traveled to the Montgomery County residence with the intent to break into the Associate Justice's house, kill the Associate Justice, and then kill himself.

At all times, **Roske** acted knowingly and intentionally.

## No Agreement

13.    Given that the parties have not entered into any plea agreement, there are no agreements, promises, undertakings, or understandings between the Defendant and the Government

with respect to the Guidelines calculation, the Defendant's criminal history, the sentence to be recommended, or any other issues related to sentencing.

        Respectfully submitted,

        Kelly O. Hayes
        United States Attorney

        _____
        *Digitally signed by THOMAS SULLIVAN, Date: 2025.04.03 11:11:50 -04'00'*

        Thomas M. Sullivan
        Coreen Mao
        Assistant United States Attorneys